**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | | |
|---|---|---|
| CHERYL A. DOWNS and | ) | |
| KENNETH DOWNS and | ) | |
| LINDA HUNTLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18-CV-33 |
| | ) | |
| v. | ) | |
| | ) | |
| BASF CORP.; BERJE, INC.; CARMI FLAVOR | ) | |
| AND FRAGRANCE COMPANY, INC.; | ) | |
| CENTROME, INC. (d/b/a ADVANCED | ) | |
| BIOTECH, INC.); CITRUS & ALLIED | ) | |
| ESSENCES, LTD.; DSM FOOD SPECIALTIES | ) | COMPLAINT |
| USA, INC.; FIRMENICH INCORPORATED; | ) | |
| FLEURCHEM, INC.; FONA | ) | |
| INTERNATIONAL, INC.; GIVAUDAN | ) | JURY TRIAL DEMANDED |
| (f/k/a TASTEMAKER, FRIES & FRIES, | ) | |
| MALLINCKRODT); INTERNATIONAL | ) | |
| FLAVORS & FRAGRANCES, INC. (f/k/a | ) | |
| BUSH BOAKE & ALLEN, INC.); | ) | |
| KERRY FLAVOR SYSTEMS US, LLC | ) | |
| (f/k/a CARGILL FLAVOR SYSTEMS; | ) | |
| SKW FLAVORS & FRUIT SYSTEMS | ) | |
| MANUFACTURING; DEGUSSA FLAVORS; | ) | |
| ALEX FRIES, INC.); O'LAUGHLIN | ) | |
| INDUSTRIES, INC.; PENTA | ) | |
| MANUFACTURING CO. INC.; PHOENIX | ) | |
| AROMAS & ESSENTIAL OILS HOLDINGS, | ) | |
| INC.; SENSIENT FLAVORS | ) | |
| INTERNATIONAL, INC.; SIGMA-ALDRICH, | ) | |
| INC.; and SYMRISE, INC.; | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN DOES 1-20 | ) | |
| Addresses unknown | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

**COME NOW** Plaintiffs, Cheryl A. Downs and Kenneth Downs, and Linda D. Huntley, by counsel, and, for Plaintiffs' Complaint against Defendants, state as follows:

**PLAINTIFFS**

1. Plaintiffs, Cheryl A. Downs and Kenneth Downs, are natural adult persons residing in Nemaha, Nebraska, 68414. At all times relevant, including at the time of the injuries and/or damages sustained by Plaintiff Cheryl A. Downs, Kenneth Downs was and is the lawful spouse of Cheryl A. Downs.

2. Plaintiff, Linda D. Huntley, is a natural adult person residing in Hamburg, Iowa 51640.

3. Plaintiffs Cheryl A. Downs and Linda D. Huntley were employed at the ConAgra Brands, Inc. (f/k/a Golden Valley Microwave Foods, Inc.) production plant in Hamburg, Iowa (referred to hereinafter as "ConAgra" or "Plaintiffs' employer") during multiple periods of time. Plaintiff Cheryl A. Downs worked at ConAgra from approximately 2000 through 2003. Plaintiff Linda D. Huntley worked at ConAgra from approximately 1990 through 2011.

4. While working for ConAgra, Plaintiffs suffered exposure to diacetyl, 2,3-pentanedione, 2,3-hexanedione, 2,3-heptanedione, and other related diketones and flavoring chemicals which caused the injuries and damages described more fully in this Complaint. (These chemicals and flavorings and any product which contains any one or more of these chemicals or flavorings are hereinafter referred to as "toxic flavorings").

5. Human occupational exposure to toxic flavorings causes damage to the human pulmonary system, including, but not limited to, flavoring related bronchiolitis obliterans syndrome, bronchiolitis obliterans, chronic obstructive pulmonary disease ("COPD"), emphysema, pulmonary fibrosis, impairment of lung function, shortness of breath, fatigue,

obstructive and restrictive abnormalities, occupational asthma, and other adverse respiratory and pulmonary conditions, symptoms, and diseases.

6. Plaintiffs suffer from one or more of the lung diseases described above and impairment resulting from exposure to toxic flavorings used at ConAgra.

7. The toxic flavorings used at the ConAgra plant were designed, manufactured, distributed, marketed and/or sold by the Defendants in the ordinary course of their businesses.

## **DEFENDANTS**

8. BASF Corporation is a corporation organized and existing under the laws of the State of New York with its principal place of business in New Jersey. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

9. Berje, Inc. is a corporation organized and existing under the laws of the State of New York with its principal place of business in New Jersey. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

10. Carmi Flavor and Fragrance Company, Inc. is a corporation organized and existing under the laws of the State of California with its principal place of business in California. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

11. Centrome, Inc. (d/b/a Advanced Biotech, Inc.) is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New Jersey. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

12. Citrus & Allied Essences, Ltd. is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

13. DSM Food Specialties USA, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New Jersey. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

14. Firmenich Incorporated is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New Jersey. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

15. Fleurchem, Inc. is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

16. FONA International, Inc. is a corporation organized and existing under the laws of the State of Illinois with its principal place of business in Illinois. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

17. Givaudan (f/k/a Tastemaker, Fries & Fries, Mallinckrodt) is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Ohio. At all relevant times, this Defendant designed, manufactured, supplied, sold,

and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

18. International Flavors and Fragrances, Inc. (f/k/a Bush Boake & Allen, Inc.) is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

19. Kerry Flavor Systems U.S., LLC (f/k/a Cargill Flavor Systems, SKW Flavors & Fruit Systems Manufacturing, Degussa Flavors and Alex Fries, Inc.) is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Wisconsin. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

20. O'Laughlin Industries, Inc. is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in New Jersey. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

21. Penta Manufacturing Co., Inc. is a corporation organized and existing under the laws of the State of Georgia with its principal place of business in New Jersey. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

22. Phoenix Aromas & Essential Oils Holding, Inc. is a corporation organized and existing under the laws of the State of New York with its principal place of business in New

Jersey. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

23. Sensient Flavors International, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Wisconsin. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

24. Sigma-Aldrich, Inc. is a corporation organized and existing under the laws of the State of Wisconsin with its principal place of business in Ohio. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

25. Symrise, Inc. is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in New Jersey. At all relevant times, this Defendant designed, manufactured, supplied, sold, and/or distributed toxic flavorings supplied to Plaintiffs' employer and used at the Plaintiffs' workplace.

26. John Does 1-20 are business entities which, upon information and belief, designed, manufactured, supplied, distributed and/or sold toxic flavorings to which Plaintiffs were exposed at all relevant times, and which, upon information and belief conducted business in, or for other reasons, including tortious acts and omissions, sought the rights and protections of the laws of the State of Iowa.

27. At all relevant times, the true names and addresses of John Doe Defendants 1-20 have been and remain unknown despite Plaintiffs' attempts to discover their names and addresses. The John Doe Defendants are individuals, partnerships, corporations, or other

business entities which are or were engaged in the business of designing, manufacturing, supplying, distributing, marketing and/or selling toxic flavorings to which Plaintiff was exposed.

## JURISDICTION AND VENUE

28. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the amount in controversy for each claim asserted, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00), and diversity of citizenship exists among the parties to this cause of action.

29. Venue is proper in the United States District Court for the Southern District of Iowa, Western Division pursuant to 28 U.S.C. § 1391(b) because the events, acts and/or omissions that gave rise to the Plaintiffs' claims occurred in Hamburg, Fremont County, Iowa.

30. Each Defendant is sued individually and for its successor liability, if any, for any business entity or person, whether named individually or not, undertaking the wrongful acts and/or omissions described in this complaint and for which said Defendant is liable under Iowa law.

31. The acts and omission of each Defendant, as described herein, were direct and proximate causes of all of Plaintiffs' injuries. Thus, subject to applicable law, each Defendant is sued jointly and severally.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

32. The toxic flavorings manufactured, distributed, and/or sold by each Defendant were used in ConAgra while Plaintiffs worked there. As a result, Plaintiffs suffered occupational exposure to the toxic flavorings manufactured and/or sold by each Defendant.

33. As a direct and proximate cause of the occupational exposure described in the preceding paragraph, Plaintiffs were injured as more fully described herein.

34. Each Defendant owed a duty of care for the safety of persons, like Plaintiffs, who were likely to incur occupational exposure to the toxic flavorings manufactured, distributed, and/or sold by each Defendant.

**COUNT I:     NEGLIGENCE**

35. Plaintiff incorporates by reference all preceding allegations as if set forth fully herein and further alleges:

36. Each Defendant had and breached the following duties to protect the Plaintiffs from injury, which constitute actionable negligence:

   a. the duty to warn all foreseeable users of Defendants' toxic flavorings of the likelihood, probability and/or foreseeability that the harms listed herein would or might occur if the products were used as intended;

   b. the duty to apply the skill of an expert in the field of flavoring and chemical design, manufacture, supply, distribution, marketing and sale, and to possess superior knowledge of the nature and qualities of its products;

   c. the duty to acquire, maintain and apply the best scientific knowledge, discoveries and advances available in the field of flavoring and/or chemical design, manufacture, supply, distribution, marketing and sale;

   d. the duty to test, design, manufacture, supply, distribute, market and sell flavorings and/or their constituents that when used as intended were reasonably safe for all foreseeable users;

   e. the duty to make feasible improvements in design, composition, or manufacture of flavorings and/or their constituents that would decrease the foreseeable risk to users;

   f. the duty to disclose to all foreseeable users the results of their own scientific research, discoveries and advances, and other scientific research, discoveries, or advances known to Defendants indicating that the use of flavorings and/or their constituents cause serious risks of harm;

   g. the duty to warn all foreseeable users of the known dangers of flavorings and/or their constituents;

      h.  the continuing duty to warn and instruct all foreseeable users of the flavorings and/or their constituents concerning defects of which the Defendants acquired knowledge or should have acquired knowledge after the product was manufactured or sold;

      i.  the continuing duty to warn and instruct all foreseeable users of the flavorings and/or their constituents concerning the measures necessary to eliminate, reduce, or mitigate the dangers of exposure to their toxic flavorings;

      j.  the duty to provide instructions to foreseeable users regarding how to eliminate, reduce, or mitigate the hazards of exposure to their flavorings and/or constituents; and,

      k.  other duties based on evidence that is unknown at this time but may become known prior to or during the trial of this matter.

37.    As a direct and proximate cause of Defendants' negligence, as described above, Plaintiffs sustained severe, permanent and progressive damage to Plaintiffs' pulmonary system, including bronchiolitis obliterans, and other systems which impaired Plaintiffs' ability to function normally.

38.    Defendants' negligence caused or contributed to cause Plaintiffs to suffer past and future physical pain, mental and emotional distress, loss of sleep and natural rest, loss of enjoyment of life, and other limitations and physical injuries.

39.    Defendants' negligence caused or contributed to cause Plaintiffs to incur expenses for past and future medical treatment, medication, medical monitoring, and medical devices. In addition, Plaintiffs have suffered and will suffer damages for loss of earnings and loss of earning capacity, and all other damages permitted by Iowa law.

40.    In addition, Defendants knew that their toxic flavorings were unusually hazardous because they cause severe, permanent lung disease, including bronchiolitis obliterans, and, as a result, that exposure to their toxic flavorings created a high degree of probability of injury. Defendants' actions in exposing Plaintiffs to their toxic flavorings and failing to mitigate the

Plaintiffs' damages were outrageous and showed complete indifference to or conscious disregard for the safety of others, including Plaintiffs. Therefore, punitive damages should be awarded in favor of Plaintiffs and against Defendants in an amount that will punish Defendants and deter others from undertaking like conduct.

WHEREFORE, Plaintiffs request judgment against the Defendants, jointly and severally, for all past, present and future compensatory damages, costs, pre-judgment and post-judgment interest, punitive damages, all in fair and reasonable amounts, and such other relief as this Court deems just and proper.

### COUNT II: STRICT PRODUCT LIABILITY - DESIGN, MANUFACTURING, AND INHERENT DEFECTS

41. Plaintiffs incorporate by reference all preceding allegations as if set forth fully herein.

42. The toxic flavorings manufactured, supplied, distributed, and/or sold by Defendants in the ordinary course of business reached ConAgra in the same material condition as manufactured, supplied, distributed, and/or sold by Defendants and were used in ConAgra in the manner intended by Defendants.

43. The products made, supplied, distributed, and/or sold by Defendants were unreasonably dangerous and defective because said products were made of or contained toxic flavorings and occupational exposure to toxic flavorings is dangerous to human health by causing the diseases, symptoms, and conditions described in the Paragraphs above.

44. Separately and independently, the toxic flavorings made or sold by Defendants were unreasonably dangerous and defective because of the manufacturing defects, design defects, and inherent defects described in the Paragraphs above.

45. As a direct and proximate result of the unreasonably dangerous and defective condition of the toxic flavorings manufactured, supplied, distributed, and/or sold by Defendants, Plaintiffs sustained severe, permanent and progressive damage to Plaintiffs' pulmonary system, including bronchiolitis obliterans, and other systems which impaired Plaintiffs' ability to function normally.

46. Defendants' tortious acts alleged herein caused or contributed to cause Plaintiff to suffer past and future physical pain, mental and emotional distress, loss of sleep and natural rest, loss of enjoyment of life, and other limitations and physical injuries.

47. Defendants' tortious acts alleged herein caused or contributed to cause Plaintiffs to incur expenses for past and future medical treatment, medication, medical monitoring, and medical devices. In addition, Plaintiffs have suffered and will suffer damages for loss of earnings and loss of earning capacity, and all other damages permitted by Iowa law.

48. In addition, Defendants knew that their toxic flavorings were unusually hazardous because they cause severe, permanent lung disease and, as a result, that exposure to their toxic flavorings created a high degree of probability of injury. Defendants' actions in exposing Plaintiffs to their toxic flavorings and failing to mitigate the Plaintiffs' damages were outrageous and showed complete indifference to or conscious disregard for the safety of others, including Plaintiffs. Therefore, punitive damages should be awarded in favor of Plaintiffs and against Defendants in an amount that will punish Defendants and deter others from undertaking like conduct.

WHEREFORE, Plaintiffs request judgment against the Defendants, jointly and severally, for all past, present and future compensatory damages, costs, pre-judgment and post-judgment

interest, punitive damages, all in fair and reasonable amounts, and such other relief as this Court deems just and proper.

### COUNT III: STRICT PRODUCT LIABILITY – FAILURE TO WARN

49. Plaintiffs incorporate by reference all preceding allegations as if set forth fully herein.

50. Each Defendant sold toxic flavorings in the course of its business and the toxic flavorings were unreasonably dangerous at the time of each sale because exposure to the toxic flavorings causes severe and permanent lung damage and disease, including bronchiolitis obliterans.

51. Plaintiffs used the toxic flavorings in a manner reasonably anticipated by Defendants and without knowledge of their characteristics due to Defendants' failure to warn the Plaintiffs of the true hazards of their toxic flavorings.

52. Each Defendant failed to adequately warn its customers and occupational users of the danger that occupational use of its toxic flavorings may cause the injuries and conditions described in the Paragraphs above.

53. Each Defendant failed to adequately warn occupational users about the manufacturing, design, and inherent product defects described in this Complaint, which caused said products to be unreasonably dangerous.

54. Each Defendant failed to adequately warn of the unreasonably dangerous characteristics and conditions of the toxic flavorings described in the Paragraphs above.

55. After the toxic flavorings were manufactured, supplied, distributed, and/or sold, each Defendant failed to meet its continuing duty to warn all foreseeable users of the toxic

flavorings' defects and unreasonably dangerous conditions of which Defendants knew or should have known, including those described herein.

56. Each Defendant's failure to give adequate warnings as described herein caused or contributed to cause Plaintiffs to sustain injuries and damages described herein.

57. As a direct and proximate result of each Defendant's acts and omissions identified in this Count, Plaintiffs sustained severe, permanent and progressive damage to Plaintiffs' pulmonary system, including bronchiolitis obliterans, and other systems which impaired Plaintiff's ability to function normally.

58. Defendants' tortious acts alleged herein caused or contributed to cause Plaintiffs to suffer past and future physical pain, mental and emotional distress, loss of sleep and natural rest, loss of enjoyment of life, and other limitations and physical injuries.

59. Defendants' tortious acts alleged herein caused or contributed to cause Plaintiffs to incur expenses for past and future medical treatment, medication, medical monitoring, and medical devices. In addition, Plaintiffs have suffered and will suffer damages for loss of earnings and loss of earning capacity, and all other damages permitted by Iowa law.

60. In addition, Defendants knew that their toxic flavorings were unusually hazardous because they cause severe, permanent lung disease and, as a result, that exposure to their toxic flavorings created a high degree of probability of injury. Defendants' actions in exposing Plaintiffs to their toxic flavorings and failing to mitigate the Plaintiffs' damages were outrageous and showed complete indifference to or conscious disregard for the safety of others, including Plaintiffs. Therefore, punitive damages should be awarded in favor of Plaintiffs and against Defendants in an amount that will punish Defendants and deter others from undertaking like conduct.

WHEREFORE, Plaintiffs request judgment against the Defendants, jointly and severally, for all past, present and future compensatory damages, costs, pre-judgment and post-judgment interest, punitive damages, all in fair and reasonable amounts, and such other relief as this Court deems just and proper.

### COUNT IV:    STRICT PRODUCT LIABILITY – FAILURE TO INSTRUCT

61.    Plaintiffs incorporate by reference all preceding allegations as if set forth fully herein.

62.    Each Defendant failed to adequately provide instructions to its customers and occupational users about the measures necessary to eliminate, reduce, or mitigate the dangers of working with and around toxic flavorings.

63.    Each Defendant failed to instruct foreseeable users concerning adequate industrial hygiene controls, the appropriate temperatures for occupational use of the toxic flavorings, proper ventilation, proper personal protective measures and equipment, air monitoring, personal monitoring, and other measures necessary to make occupational use of the toxic flavorings reasonably safe.

64.    After the toxic flavorings were manufactured, distributed, and/or sold, each Defendant failed to meet its continuing duty to provide adequate instructions to its customers and occupational users about the measures necessary to eliminate, reduce, or mitigate the dangers of working with and around toxic flavorings.

65.    Each Defendant's failure to give adequate instructions as described herein caused or contributed to cause Plaintiffs to sustain injuries and damages described herein.

66. As a direct and proximate result of each Defendant's acts and omissions identified in this Count, Plaintiffs sustained severe, permanent and progressive damage to Plaintiffs' pulmonary system and other systems which impaired Plaintiffs' ability to function normally.

67. Defendants' tortious acts alleged herein caused or contributed to cause Plaintiffs to suffer past and future physical pain, mental and emotional distress, loss of sleep and natural rest, loss of enjoyment of life, and other limitations and physical injuries.

68. Defendants' tortious acts alleged herein caused or contributed to cause Plaintiffs to incur expenses for past and future medical treatment, medication, medical monitoring, and medical devices. In addition, Plaintiffs has suffered and will suffer damages for loss of earnings and loss of earning capacity, and all other damages permitted by Iowa law.

69. In addition, Defendants knew that their toxic flavorings were unusually hazardous because they cause severe, permanent lung disease and, as a result, that exposure to their toxic flavorings created a high degree of probability of injury. Defendants' actions in exposing Plaintiffs to their toxic flavorings and failing to mitigate the Plaintiffs' damages were outrageous and showed complete indifference to or conscious disregard for the safety of others, including Plaintiffs. Therefore, punitive damages should be awarded in favor of Plaintiffs and against Defendants in an amount that will punish Defendants and deter others from undertaking like conduct.

WHEREFORE, Plaintiffs request judgment against the Defendants, jointly and severally, for all past, present and future compensatory damages, costs, pre-judgment and post-judgment interest, punitive damages, all in fair and reasonable amounts, and such other relief as this Court deems just and proper.

### COUNT V: <u>LOSS OF CONSORTIUM</u>

70. Plaintiff, Kenneth Downs, incorporates by reference the allegations set forth in Paragraphs 1 through 69, as if fully set forth herein.

71. As a direct result of the Defendants' aforementioned conduct, Plaintiff, Kenneth Downs, sustained loss of his wife's consortium, society, companionship, comfort, protection, care, attention, advice, counsel and guidance; loss of his wife's financial support; loss of his wife's services; and has incurred medical and medical monitoring expenses, which will continue to be incurred in the future.

WHEREFORE, Plaintiff, Kenneth Downs, requests judgment against the Defendants, jointly and severally, for all past, present and future compensatory damages, costs, pre-judgment and post-judgment interest, punitive damages, all in fair and reasonable amounts, and such other relief as this Court deems just and proper.

### <u>JURY DEMAND</u>

Plaintiffs demand a jury trial on all issues.

Respectfully submitted,

/s/ Jay M. Smith
Jay M. Smith, AT0007387
SMITH & McELWAIN LAW OFFICE
3209 Ingersoll Avenue, Suite 104
Des Moines, Iowa  50312
Telephone:  515/255-9487
Facsimile:  515/255-9513
E-mail:  smitmcel@aol.com

ATTORNEYS FOR PLAINTIFFS

                    Scott B. Hall (Will be filing for
                        Pro Hac Vice Admission)
                    MOTLEY RICE LLC
                    4151 North Mulberry Drive, Suite 201
                    Kansas City, MO  64116
                    Telephone:  816/569-5728
                    Facsimile:   816/569-6422
                    E-mail:   sbhall@motleyrice.com

                    LEAD COUNSEL FOR PLAINTIFFS